BARBARA POWERS, as Administratrix of the Estate of ROBERT M. KINGSLAND, Deceased, Appellant, v NIAGARA MOHAWK POWER CORPORATION et al., Defendants, and GLENVILLE BEER DISTRIBUTORS, LTD., Respondent. (Action No. 1.)

CHERYL A. GAAR, an Infant, by DONNA J. GAAR, Her Parent and Natural Guardian, et al., Appellants, v DONALD J. RITZ et al., Defendants, and GLENVILLE BEER DISTRIBUTORS, LTD., Respondent. (Action No. 2.)

VIKKI M. PEEK, an Infant, by ALFRED J. PEEK, Her Parent and Natural Guardian, et al., Appellants, v DONALD J. RITZ et al., Defendants, and GLENVILLE BEER DISTRIBUTORS, LTD., Respondent. (Action No. 3.)

Third Department, June 11, 1987

**APPEARANCES OF COUNSEL**

*Grasso, Rodriguez, Putorti & Grasso (Michael E. Basile* of counsel), for appellant in action No. 1.

*Nicholas D. Morsillo* for appellants in actions Nos. 2 and 3.

*Edward A. McMahon* for respondent.

**OPINION OF THE COURT**

WEISS, J.

The instant actions were precipitated by an early morning vehicular accident on September 22, 1983, when a van driven by defendant Donald J. Ritz struck a utility pole off the Lock 8 Access Road in the Town of Glenville, Schenectady County. Vikki M. Peek, Cheryl A. Gaar, Robert Merrill Kingsland and another person were passengers in the van. At approximately 6:30 P.M. the previous evening, the group stopped to buy beer at defendant Glenville Beer Distributors, Ltd. (Glenville Beer).

All were under the legal age for purchasing liquor, which was 19 at that time (see, Alcoholic Beverage Control Law former § 65 [1]).[1] With funds contributed by the members of the group, Kingsland and Ritz went into Glenville Beer and purchased a quantity of beer. It is undisputed that Ritz and Kingsland were sober at this time. Thereafter, the group traveled to the City of Glens Falls, Warren County, and later back to Glenville, consuming the beer in the process. When the collision occurred, a high power tension line fell onto the van, fatally electrocuting Kingsland and severely burning Peek and Gaar. In the three separate actions that followed, plaintiffs asserted causes of action against Glenville Beer premised on a violation of the Dram Shop Act (General Obligations Law § 11-101) and common-law negligence as a result of the unlawful sale of beer to persons under the age of 19. After pretrial discovery was conducted, Glenville Beer moved for summary judgment dismissing the complaints against it. In granting the motion in its entirety, Supreme Court determined that the Dram Shop Act only provided a cause of action against a vendor who sold liquor to an intoxicated person, and did not provide a right of recovery for injuries resulting from the sale of liquor to a person who was not intoxicated at the time of the purchase. The court further dismissed the common-law negligence causes of action since the accident occurred at a location beyond the control of Glenville Beer. Plaintiffs have appealed.

The principal issue presented on this appeal is whether the Dram Shop Act provides a cause of action against a vendor for injuries resulting from its sale of liquor to an underage person even when such person is concededly sober at the time of sale. General Obligations Law § 11-101 (1) provides that: "Any person who shall be injured in person, property, means of support, or otherwise by any intoxicated person, or by reason of the intoxication of any person, whether resulting in his death or not, shall have a right of action against any person who shall, by unlawful selling to or unlawfully assisting in procuring liquor for *such intoxicated person,* have caused or contributed to such intoxication; and in any such action such person shall have a right to recover actual and exemplary damages" (emphasis supplied). Supreme Court construed the underscored phrase as restricting the statute's application to instances where the sale is made to an intoxicated person or a person actually or apparently under the influence of alcohol

---

1. This age classification has since been raised to 21 (see, L 1985, ch 274).

*(see,* Alcoholic Beverage Control Law § 65 [former (2)]).[2] We reach a different conclusion.

The purpose of the Dram Shop Act is to afford compensation to victims whose injuries emanate from the unlawful sale of alcoholic beverages *(see, Smith v Guli,* 106 AD2d 120, 123). To determine what constitutes an unlawful sale of liquor under General Obligations Law § 11-101, the statute must be read in conjunction with Alcoholic Beverage Control Law § 65 *(Matalavage v Sadler,* 77 AD2d 39, 42). At the time of the accident, Alcoholic Beverage Control Law former § 65 set forth three distinct classifications of "prohibited sales", including the sale of alcoholic beverages to a person under the age of 19 *(Smith v Guli, supra,* at 123; *Matalavage v Sadler, supra,* at 42-43). The purport of Supreme Court's decision is to extend liability only to situations involving the second classification, i.e., the sale to an intoxicated customer. Such selective application of the statute is inappropriate *(see, People v Graham,* 55 NY2d 144, 150-151). Moreover, the incongruity of Supreme Court's analysis is evident for it would preclude liability even where a vendor knowingly sold alcoholic beverages to an habitual drunkard, as prohibited in the third classification. In our view, since "persons under the age of 19" (now 21) and "intoxicated persons" are separately classified (Alcoholic Beverage Control Law former § 65 [1], [2]), an underage person need not be intoxicated at the time of the purchase for the sale to be unlawful under the Dram Shop Act *(see, Smith v Guli, supra;* cf., *McNally v Addis,* 65 Misc 2d 204, 216-222). Here, since Kingsland and Ritz were both 18 years of age at the time of the sale, the Dram Shop Act did provide a cause of action against Glenville Beer.

The Legislature's enactment of General Obligations Law § 11-100,[3] which came into effect after the accident *(see,* L

**2.** This statutory standard has recently been changed to prohibit sales to "[a]ny *visibly* intoxicated person" (L 1986, ch 750, § 1, eff Aug. 1, 1986; emphasis supplied).

**3.** General Obligations Law § 11-100 (1), entitled "Compensation for injury or damage caused by the intoxication of a person under the age of twenty-one years" now reads in pertinent part as follows: "Any person who shall be injured in person, property, means of support or otherwise, by reason of the intoxication or impairment of ability of any person under the age of twenty-one years, whether resulting in his death or not, shall have a right of action to recovery actual damages against any person who knowingly causes such intoxication or impairment of ability by *unlawfully furnishing* to or unlawfully assisting in procuring alcoholic beverages for such person with knowledge or reasonable cause to believe that such person was under the age of twenty-one years" (emphasis supplied).

1983, ch 641, eff Oct. 23, 1983), does not compel a different conclusion. Liability under General Obligations Law § 11-101 is limited to "commercial dispensers of alcoholic beverages" *(Gabrielle v Craft,* 75 AD2d 939, 940). Indeed, the failure to allege a *sale* is fatal to a dram shop claim *(supra).* General Obligations Law § 11-100, on the other hand, imposes liability on persons who unlawfully *furnish* or assist in procuring alcoholic beverages for an underage person. Contrary to Supreme Court's interpretation, we cannot agree that the new legislation was intended to create a new cause of action against a vendor who *sells* alcohol to an underage person who was not intoxicated at the time of the sale. The distinguishing feature of this new legislation was that it imposed liability in situations where the alcohol was *furnished* to a person under 19 (now 21) without a sale, i.e., by the social host. Since no tort cause of action existed against one who simply furnished alcohol under either the common law or the Dram Shop Act *(see, Gabrielle v Craft, supra),* General Obligations Law § 11-100 serves to fill that gap, albeit only where an underage person is involved. Such a conclusion, however, does not end our inquiry.

Glenville Beer further maintains that plaintiffs are precluded from recovery because Kingsland, Gaar and Peek all contributed to the purchase of the beer. It is beyond dispute that General Obligations Law § 11-101 does not create a right of recovery in favor of an individual or his estate whose intoxication resulted from the unlawful sale of liquor *(Mitchell v The Shoals,* 19 NY2d 338, 340-341; *Delamater v Kimmerle,* 104 AD2d 242, 244; *Matalavage v Sadler, supra,* at 43; *Paul v Hogan,* 56 AD2d 723). Nor may one who actively causes or procures the intoxication of the person responsible for the accident recover under this statute *(Mitchell v The Shoals, supra,* at 341; *accord, Elliott v Barry,* 34 Hun 129; *Harris v Hurlburt,* 83 Misc 2d 626, 629; *see,* Annotation, 26 ALR3d 1112, 1119-1120). To be precluded from recovery, however, the "injured person must play a much more affirmative role than that of drinking companion" *(Mitchell v The Shoals, supra,* at 341). In view of the undisputed evidence that Kingsland, Gaar and Peek all contributed to the purchase of the beer, and thus would be individually precluded from recovering under the statute, the causes of action of Barbara Powers, as administratrix of Kingsland's estate, and of Donna Gaar and Alfred Peek, in their representative capacities as the parents of Gaar and Peek, should be dismissed. However, to

the extent that Donna Gaar and Alfred Peek, as parents, have sued in their individual capacities, the Dram Shop Act causes of action should be reinstated *(see,* General Obligations Law § 11-101 [4]; *Reuter v Flobo Enters.,* 120 AD2d 722, 723).

Finally, since the accident occurred several hours after the sale in question and outside the area of Glenville Beer's control, Supreme Court properly dismissed the common-law negligence causes of action *(see, Delamater v Kimmerle, supra).*

KANE, J. (concurring in part and dissenting in part). The courts have consistently held that since the Dram Shop Act (General Obligations Law § 11-101) represents the creation of a liability not previously existing in the common law, it should be construed narrowly *(Delamater v Kimmerle,* 104 AD2d 242; *Wright v Sunset Recreation,* 91 AD2d 701). Consistent with the above, it has always been my understanding that the Dram Shop Act only created a statutory right of action against one who unlawfully sells liquor *to an intoxicated person* as that term is defined in Alcoholic Beverage Control Law § 65 (2) *(see, Harris v Hurlburt,* 83 Misc 2d 626; *McNally v Addis,* 65 Misc 2d 204; Bohner, *Some Practical Aspects of Dram Shop Litigation,* 51 NY St BJ 287, 289 [June 1979]; *cf., Westbrook v Miller,* 98 App Div 590).

In my view, the interpretation suggested by the majority is an expansion of the scope of coverage provided by the Dram Shop Act never intended by the Legislature. A review of the lengthy history of the Dram Shop Act reveals that it was intended to apply only to those situations where the seller had some notice of a potential violation of the Dram Shop Act *(McNally v Addis, supra;* Bohner, *Some Practical Aspects of Dram Shop Litigation,* 51 NY St BJ 287 [June 1979]; *see also,* L 1986, ch 750, § 1). Pursuant to my reading of the Dram Shop Act, the seller would have notice since the intoxication or reasonable inference thereof must be recognizable to constitute a sale in violation of the Alcoholic Beverage Control Law § 65 (2). On the other hand, an illegal sale to an underage person requires no such cognizance (Penal Law § 260.20 [4]; Alcoholic Beverage Control Law § 65 [1]; *People v Gar Bob Corp.,* 49 Misc 2d 88). Moreover, imposition of Dram Shop Act liability upon the alleged sale to an underage person could produce unprecedented difficulties for a defendant to refute the allegations concerning a sale. Since under the majority's interpretation it would be possible for a sale to take place months prior to the intoxication which resulted in an acci-

dent, defendant would thus be at a loss to contest the issue of unlawful sale and causation. Accordingly, I would affirm Supreme Court's order and judgment.

MAHONEY, P. J., CASEY and HARVEY, JJ., concur with WEISS, J.; KANE, J., concurs in part and dissents in part in an opinion.

Order and judgment modified, on the law, without costs, by reversing so much thereof as dismissed the Dram Shop Act causes of action brought by plaintiffs Donna J. Gaar and Alfred J. Peek in their individual capacities, and, as so modified, affirmed.